```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

ANDREW DUONG,                         1:18-cv-15590-NLH-KMW

        Plaintiff,             **OPINION**

    v.

BENIHANA NATIONAL CORPORATION
and JOHN DOE(S),

        Defendants.

**APPEARANCES:**

EVA CAROLINE ZELSON
GREGG L. ZEFF
ZEFF LAW FIRM
100 CENTURY PARKWAY
SUITE 305
MT.LAUREL, NJ 08054

    *Attorneys for Plaintiff.*

SANDRA T. JIMENEZ
JEDD E. MENDELSON
LITTLER MENDELSON, P.C.
ONE NEWARK CENTER
1085 RAYMOND BLVD., 8TH FLOOR
NEWARK, NJ 07102

    *Attorneys for Defendants.*

**HILLMAN**, **District Judge**

    This employment matter comes before the Court on motions advanced by each party.  Defendant Benihana National Corporation ("Defendant") moves for summary judgment (ECF No. 25), while Plaintiff Andrew Duong ("Plaintiff") moves for an adverse

inference due to the loss of surveillance video he alleges is relevant to the parties' dispute (ECF No. 20).  For the reasons that follow, Defendant's motion will be granted, and Plaintiff's motion will be denied.

**BACKGROUND**

In deciding Defendant's motion for summary judgment, the Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a) and notes disputes where appropriate.  In addressing Plaintiff's motion for an adverse inference, the Court draws additional facts from the affidavits submitted by the parties.  Those facts are combined for purposes of this section.

Plaintiff was formerly employed as a chef at a Benihana restaurant located in Cherry Hill, New Jersey.  (ECF No. 25-5 ("Def. SOMF") at ¶1).  On May 2, 2018, Plaintiff and another Benihana employee, Michael Stewart ("Stewart"), got into a physical and verbal altercation in the kitchen.  (Def. SOMF at ¶11).  Plaintiff says he confronted Stewart about what Plaintiff determined to be inappropriate workplace behavior involving a female employee,[1] after which Stewart physically

---

[1] Plaintiff allegedly reported this behavior to Defendant before the altercation occurred, but Defendant did not respond to the allegations made against Stewart.  See (ECF No. 30-2 at ¶¶3-7). Plaintiff also says that, at some unidentified time before the date on which the altercation between Plaintiff and Stewart

attacked him.  See (ECF No. 30-2 at ¶¶34, 40).

On May 3, 2018, the restaurant's General Manager, Susan Crowley ("Crowley"), reviewed surveillance footage from the incident depicting an altercation between Stewart and Plaintiff. (Def. SOMF at ¶16).  While the parties dispute the motivation for and details of the altercation, they both agree an altercation occurred.  See (Def. SOMF at ¶20).  Thereafter, Crowley emailed Defendant's regional manager, Chun Chang ("Chang") documenting the incident.  (Def. SOMF at ¶18).

Defendant maintains a Workplace Violence Policy and Employee Conduct and Work Rules policy, (Def. SOMF at ¶21), which in relevant part, "prohibit any employee from . . . committing any act of violence in the workplace[.]"  (Def. SOMF at ¶22).  Defendant's policies state that "[a]ny employee who is found to have violated this policy will be subject to disciplinary action up to and including termination."  (Def. SOMF at ¶22).  Separately, the policies provide that disorderly conduct, "including but not limited to fighting or other violent . . . behavior" may result in disciplinary action, "up to and

---

occurred, Plaintiff complained to Defendant of various health and sanitation issues, including the presence of mouse droppings in the kitchen and food storage areas, and issues with the dishwasher.  (ECF No. 30-2 at ¶8).  For reasons to be expressed below, the relevancy of these prior reports is limited.

3

including the possibility of immediate discharge." (Def. SOMF at ¶23).

Following the altercation, both Plaintiff and Stewart were discharged by Defendant for the stated reason of fighting in the workplace. (Def. SOMF at ¶¶27-28). Plaintiff denies that his conduct violated Defendant's policies and avers, instead, that he was fired for previously reporting sexual harassment and safety issues at the restaurant. (ECF No. 30-4 ("Pl. SOMF") at ¶27).

According to Plaintiff, he requested surveillance footage from the restaurant that depicted the altercation involving Stewart, but later learned it had not been preserved. Destruction of this video, Plaintiff argues, occurred despite internal requests that it be preserved and despite Defendant's document retention policy. According to Defendant, it did not preserve the video as it did not foresee any need to do so.

Plaintiff filed an initial complaint in this matter on October 1, 2018, and Defendant removed that complaint from the Superior Court of New Jersey to this Court on November 1, 2018 (ECF No. 1). Plaintiff filed an amended complaint on November 16, 2018, (ECF No. 11), and that amended complaint is the operative pleading before the Court. Plaintiff's amended complaint advances a claim under the Conscientious Employee

Protection Act, N.J. Stat. Ann. § 34:19-1, *et seq.*; a claim for wrongful termination consistent under Pierce v. Ortho Pharm. Corp., 417 A.2d 505 (N.J. 1980); and a claim for retaliation under the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5-1, *et seq.*

Both Plaintiff's motion for an adverse inference following non-retention of the surveillance footage and Defendant's motion for summary judgment have been fully briefed.  As such, these matters are ripe for adjudication.

## DISCUSSION

### I. Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367.  See (ECF No. 10) (certifying that Plaintiff is a citizen of New Jersey while Defendant is a citizen of Delaware and Florida).

### II. Legal Standard – Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by []showing[]--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

## ANALYSIS

I. **Plaintiff's Retaliation Claims Under CEPA, NJLAD, and Pierce**

NJLAD and CEPA retaliation claims are quite similar and "[i]t is beyond dispute that the framework for proving a CEPA claim follows that of a LAD claim." Ivan v. Cty. of Middlesex, 595 F. Supp. 2d 425, 466 (D.N.J. 2009) (quoting Donofry v. Autotote Systems, Inc., 795 A.2d 260 (N.J. Super. Ct. App. Div. 2001)).  To establish retaliation under CEPA, a plaintiff must show: "(1) the plaintiff reasonably believed the employer's conduct violated a law or regulation; (2) the plaintiff performed 'whistle-blowing activity' as defined in CEPA; (3) an adverse employment action has been taken against [him]; and (4) the whistle-blowing activity caused such adverse employment action." Dillard, et al. V. Morris County Prosecutor's Office, et al., No. 19-19089, 2020 WL 4932527, at *9 (D.N.J. Aug. 24, 2020) (quoting Martone v. Jet Aviation Flight Servs. Inc., No. 19-21011, 2020 WL 3969919, at *3 (D.N.J. July 13, 2020)).

Similarly, to make a case of retaliation under NJLAD, a plaintiff must show (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Sgro v. Bloomberg L.P., 331 F. App'x 932, 939 (3d Cir. 2009) (citing Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (citations omitted)).

A causal connection between the adverse employment action and the protected activity is an element of a retaliation claim under both CEPA and NJLAD. See Kerrigan v. Otsuka Am. Pharm., Inc., 706 F. App'x 769, 771-72 (3d Cir. 2017); Sgro, 331 F. App'x at 939. To demonstrate causation, a plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision" by establishing a factual nexus between his protected activity and the alleged retaliatory conduct through either direct or circumstantial evidence. Kerrigan, 706 F. App'x at 771-72. In determining whether a causal connection exists, courts examine the proffered evidence and ask whether it may suffice to raise the inference of causation. Id.

Plaintiff's Pierce claim follows a similar path. To prevail on such a claim, Plaintiff must: (1) identify a clear mandate of public policy which his alleged discharge violated; (2) allege that he made internal or external complaints or objections regarding, or refused to participate in, conduct that violates public policy; and (3) establish that he was discharged in retaliation for opposing conduct that violated the public policy at issue. Eke v. Maxim Healthcare Serv., Inc., No. 12-05699, 2013 WL 1952459, at *4 (D.N.J. May 9, 2013). Plaintiff's

9

Pierce claim also carries a burden of proving some degree of causal connection between the complaint and discharge. See id.

Defendant argues Plaintiff does not identify a sufficient causal connection between his engaging in a protected activity and his termination, and therefore, he fails to state a prima facie case for retaliation. Defendant asserts that it fired Plaintiff exclusively because he got into a physical and verbal altercation with a colleague while at work. Plaintiff argues that Defendant's proffered reason for terminating him is pretextual, that it was not the fight that triggered the decision to fire him, but rather that decisionmakers knew of Plaintiff's prior complaints about Stewart and sanitation, that he made those complaints within hours of being fired, and that it was his complaints that serve as the true motivation for his termination.

Plaintiff's contentions do not raise sufficient disputes of material fact to preclude summary judgment in Defendant's favor. Plaintiff admits he engaged in a physical and verbal altercation with Stewart while at work. He further admits that Defendant fired both him and Stewart thereafter, with Defendant identifying this altercation as the basis for termination. Just because Plaintiff filed complaints about workplace conditions at some earlier time, and was fired shortly thereafter on other

grounds, does not create a causal connection between those complaints and the termination under the circumstances presented. Higgins v. Pascack Valley Hosp., 730 A.2d 327, 338 (N.J. 1999) ("Filing a complaint . . . does not insulate the complaining employee from discharge or other disciplinary action for reasons unrelated to the complaint."). Indeed, temporal proximity between complaints and termination need not be the Court's only reference point for causation. When the record is viewed as a whole, no reasonable factfinder could conclude that a connection between Plaintiff's complaints and his termination exists. Instead, there was clearly an intervening occurrence between Plaintiff's complaints and his termination, that being a physical altercation in the workplace, in violation of Defendant's stated policies against such interactions.

In this case, no reasonable jury could conclude that the true motivation for Plaintiff's firing was anything but his physical altercation with Stewart while at work. Any dispute over whether the decisionmakers knew of Plaintiff's prior complaints is irrelevant to the Court's determination. Said differently, no jury could find it more likely than not that the true motive for firing Plaintiff was not his fighting at work, but rather as retaliation for his complaining about workplace sanitation and employee behavior. See Kerrigan, 706 F. App'x at

11

771-72.  As such, the Court finds Plaintiff fails to state a prima facie case of retaliation under CEPA, NJLAD, and Pierce, and will grant summary judgment in Defendant's favor.[2]

## II.  Plaintiff's Motion For An Adverse Inference

While the Court finds summary judgment should be granted, the Court provides explanation for its denial of Plaintiff's motion for an adverse inference.  Plaintiff asks this Court to impose an adverse inference against Defendant as a penalty for what Plaintiff argues is spoliation of evidence, namely, surveillance video of the altercation involving Plaintiff. Defendant argues Plaintiff fails to show it had a duty to preserve the surveillance video and also that Plaintiff fails to show that he suffered prejudice due to the loss of such video.

---

[2] Defendant argues separately that Plaintiff's NJLAD and Pierce retaliation claims are barred by CEPA's waiver provisions, which preclude the bringing of a CEPA claim alongside a related claim under other provision of law.  See N.J. Stat. Ann. § 34:19-8. Plaintiff argues the preclusion does not attach until some later time.  Plaintiff's argument has merit.  The preclusion issue has been examined by courts within this District before, including quite recently and thoroughly by Judge Brian Martinotti in Curro v. HD Supply, Inc., No. 19-19198-BRM-JAD, 2020 WL 3496955 (D.N.J. June 29, 2020).  In Curro, Judge Martinotti recognized that it remains unclear when preclusion attaches, i.e., whether claims are precluded at some point before they are presented to a jury for consideration.  See Curro, 2020 WL 3496955, at *4-6 (citing Bordone v. Passaic Pub. Library Tr., No. A-2299-15T4, 2018 WL 2271354, at *8 (N.J. Super. Ct. App. Div. May 18, 2018) (rejecting arguments that the point of election of remedies was before a case was submitted to a jury).  The Court need not address this issue, however, having concluded that summary judgment is appropriate on other grounds.

12

Spoliation occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Indem. Ins. Co. of N. Am. v. Electrolux Home Prod., Inc., 520 F. App'x 107, 111 (3d Cir. 2013) (quoting Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012)).

> For the [spoliation] rule to apply . . . it must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. See generally* 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").

Bull, 665 F.3d at 79 (quoting Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995)) (emphasis and bracketing in original). "Therefore, a finding of bad faith is pivotal to a spoliation determination." Id.

"The duty to preserve evidence begins when litigation is 'pending or reasonably foreseeable.'" Granger v. Acme Abstract Co., LLC, No. 09-2119-NLH-KMW, 2012 WL 12910262, at *3 (D.N.J. June 14, 2012) (quoting Micron Techn., Inc. v. Rambus Inc., 645

13

F.3d 1311, 1320 (Fed. Cir. 2011)).  Litigation is reasonably foreseeable when "a reasonable party in the same factual circumstances would have reasonably foreseen litigation."  Id. (quoting Micron, 645 F.3d at 1320).  Plaintiff has not shown the Defendant acted in bad faith in not preserving the surveillance footage.  Defendant says it did not reasonably foresee this or any other litigation and that the video footage was simply overwritten in the normal course of business.  Plaintiff has not identified facts from which the Court may conclude that Defendant acted with ill-will or in bad faith so as to warrant imposition of sanctions for spoliation.

More importantly, however, Plaintiff has not shown he would suffer prejudice from not having access to the video he seeks.  Plaintiff's action claims he was improperly retaliated against, fired for reporting workplace issues.  As discussed above, Defendant says it fired Plaintiff after he engaged in a workplace fight.  Plaintiff readily admits he engaged in that altercation, though he disputes the details of it.  The video is, therefore, of no moment to Plaintiff's action.  While Plaintiff suggests it may show he was not the aggressor, Defendant's decision to terminate Plaintiff and Stewart in tandem clearly signifies that Defendant's decision did not turn on whether Plaintiff was or wasn't the aggressor; instead, the

focus was solely on the fact that both Plaintiff and Stewart engaged in a physical altercation at work.  Stewart's equal treatment by Defendant further supports a finding that Plaintiff's termination was not in retaliation for any prior reporting, but for fighting.

Because Plaintiff admits to fighting, even if the video proved Plaintiff's version of events to be true, it would do nothing to sway the Court's view that no reasonable disputes exists that Plaintiff was terminated for fighting, and not in retaliation for lodging internal complaints.  As such, video or not, the outcome would be the same, and therefore, not having access to the video does not hamper Plaintiff's ability to proceed.  On that basis, the Court declines to impose some form of sanction against Defendant.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (ECF No. 25) will be granted and Plaintiff's motion for an adverse inference (ECF No. 20) will be denied. The Clerk will be directed to mark this matter closed.

An appropriate Order will be entered.


Date: September 10, 2020             s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.